IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

APPOTRONICS CORPORATION, LTD.,

    Plaintiff,

    v.

CIVIL NO. 2:19-cv-466

DELTA ELECTRONICS, INC.,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court upon defendant and counterclaim-plaintiff Delta Electronics, Inc.'s ("Delta") motion to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 30. Delta's motion to transfer was fully briefed and following oral argument of counsel, the Court **DENIED** Delta's motion to transfer from the bench. ECF No. 67. This Opinion and Order memorializes the Court's reason for this decision.

### I.    FACTUAL BACKGROUND

Plaintiff and counterclaim-defendant Appotronics Corporation, Ltd. ("Appotronics") is a Chinese corporation with its registered place of business at 21F & 22F, High-Tech Zone Union Tower, No. 63, Xuefu Road, Nanshan District, Shenzhen 518000, China. See First Amended Complaint, ECF No. 27 ("First Am. Compl.") ¶ 17. "Appotronics is a world leader in laser display technology for projectors and televisions for an array of applications including movie theatres, corporate installations, and other large venues." Id. ¶ 2. In fact, "Appotronics invented the first blue laser-based phosphors laser display technology called ALPD®[,]" which overcomes the limitations of light sources such as mercury-based lamps and light emitting diodes ("LEDs") and the problem of speckle in a traditional system that uses separate red, green, and blue laser sources

1

to generate an image. Id. ¶¶ 3–4. Appotronics is also the sole owner of U.S. Patent No. 9,612,511 ("the '511 Patent") at the United States Patent and Trademark Office ("USPTO"). ECF No. 29 ¶ 25.

Delta is a Taiwanese corporation with its principal place of business located at 186 Ruey Kuang Rd., Neihu, Taipei 11491, Taiwan. Id. ¶ 18. According to Delta's Answer and Counterclaim to the First Amended Complaint, Delta is "a global provider of power management solutions, designs, manufactures and sells a wide variety of electronic products around the world." ECF No. 29 at 9 ¶ 7. Delta is also "one of the world's leading video projector companies, and has had a long history of designing and manufacturing both lower-end and higher-end projector products, including three-chip Digital Light Processing ("3-Chip DLP") projectors, which are used for very high-performance applications, such as auditoriums or theaters." Id. at 9 ¶ 8. Delta is the sole owner of U.S. Patent No. 9,024,241 ("the '241 Patent"); U.S. Patent Nos. 9,274,407 ("the '407 Patent"); 9,726,335 ("the '335 Patent); 10,310,363 ("the '363 Patent"); and 10,281,810 ("the '810 Patent") at the USPTO. First Am. Compl. ¶¶ 25, 34, 43, 52, 61.

Appotronics alleges that in 2010, Delta approached a former affiliate of Appotronics, YLX Incorporated ("YLX"),[1] to help to improve the light source used in some of Delta's projector products. Id. ¶ 6. According to the First Amended Complaint, Delta wanted YLX to engineer and manufacture a light source to replace the current light source used in Delta's projectors "to achieve certain target performance levels." Id. In July 2010, the parties entered into a Mutual Non-Disclosure Agreement governed by California law ("MNDA"),[2] and from around January

---

[1] According to Appotronics' First Amended Complaint, in 2010 when Delta approached Appotronics' former affiliate YLX, YLX went by the name of Appotronics (China) Corporation. For the sake of consistency, the Court will refer to Appotronics' former affiliate as YLX, just as Appotronics does in its First Amended Complaint.

[2] Appotronics states that the MNDA was effective July 22, 2010, while Delta contends that the MNDA was not executed until July 25, 2011. The Court is unable to verify which date is correct as neither party has attached the MDNA.

2011 until August 2011, then-employees of YLX Dr. Yi Li ("Dr. Li") and Dr. Fei Hu ("Dr. Hu") worked on the light source for Delta. Id. ¶ 7. Throughout this time period, YLX "made several disclosures of its light source designs to Delta, including 3D drawings and prototypes, that, among other things, fully described the inventions later disclosed and claimed in the '241 Patent, assigned to Delta." Id. ¶ 8.

Around August 21, 2011, Delta engineers visited YLX in China to discuss the project. Id. ¶ 9. According to the First Amended Complaint, on or about August 23, 2011, YLX presented a working protype to Delta. Id. Appotronics alleges that the "working protype us[ed] a light source module that embodied the key inventions claimed by the '241 Patent, the '407 Patent, the '335 Patent, the '363 Patent, and the '810 Patent." First Am. Compl. ¶ 9. Appotronics also alleges that YLX gave Delta possession of the working protype on or about August 23, 2011 to "examine and study the system in detail." Id.

It is alleged that after receiving the working prototype, a representative of Delta, Mr. Keh-Su ("Kirk") Chang ("Mr. Chang"), emailed Dr. Li on August 24, 2011. Id. ¶ 10. In this email, Mr. Chang expressed Delta's excitement about the new light source and wanted to discuss delaying the demonstration of the projector with the new light source at a trade show. Id. Mr. Chang also suggested that the parties should jointly file for intellectual property protection based on the light source prototype disclosed by YLX. Id.

Appotronics contends that Dr. Li replied to Mr. Chang's email the next day on August 25, 2011 and warned Delta to not pursue patent rights on the invention as it was created solely by YLX employees. Id. ¶ 11. That same day Dr. Hu rushed to prepare and file a provisional patent application with the USPTO, for the technology of the working protype that Dr. Hu and Dr. Li created, which was given the U.S. Provisional Application No. 61/527,501 ("the '501 Provisional Application"). The '501 Provisional Application ultimately led to the issuance of U.S. Patent No.

3

9,612,511 ("the '511 Patent"). Id. ¶ 12. The '511 Patent is assigned to Appotronics and lists Dr. Hu of Shenzhen, China, Dr. Li of Pleasanton, California, and Yi Yang of Shenzhen, China as the sole inventors. ECF No. 29-1, at 1.

Appotronics claims that on September 22, 2011, Delta, "secretly and without notice," filed a provisional patent application with the USPTO "for the subject matter invented by Drs. Li and Hu and previously disclosed to Delta[,]" which was given the U.S. Provisional Application No. 61/537,687 ("the '687 Provisional Application"). First Am. Compl. ¶ 13. The '687 Provisional Application listed only Delta's Mr. Chang as project head, and Delta employees Bor Wang, and Chien-Hao Hua as the only inventors. Id. ¶ 14.[3] Appotronics argues that the '687 Provisional Application (and all applications claiming priority to it) failed to list any of the true inventors of from YLX. Id.

The '687 Provisional Application ultimately led to the issuance of the '241 Patent, the '407 Patent, the '335 Patent, the '363 Patent, and the '810 Patent. Id. ¶ 15. Again, Appotronics argues that these five patents recite and claim subject matter, "including the improved illumination system and technology devised by [YLX], which was invented solely by Drs. Hu and Li. However, Delta intentionally omitted both of these individuals as named inventors" on these patents. Id. As a result, Appotronics seeks recovery of its intellectual property that it alleges Delta misappropriated and wrongfully converted.

## II.  PROCEDURAL HISTORY

On September 6, 2019, Appotronics filed the instant lawsuit in the United States District Court for the Eastern District of Virginia against Delta for correction of inventorship of the '241 Patent pursuant to 35 U.S.C. § 256. See Complaint, ECF No. 1 ("Compl."). Because Delta is a

---

[3] "Certain subsequent patent applications filed by Delta that claim priority to the '687 Provisional Application (such as the applications that eventually issued as the '335 Patent, the '363 Patent, and the '810 Patent) list in addition, or in the alternative, Yen-I Chou and Chi Chen as inventors." First Am. Compl. ¶ 14.

4

foreign, Taiwanese corporation who failed to designate an agent to be served process or notice of proceedings affecting its patent and rights thereunder, Appotronics filed a motion for alternative service pursuant to 35 U.S.C. § 293 and United States District Court for the Eastern District of Virginia Local Rule 7 on September 11, 2019 ("Motion for Alternative Service"). ECF No. 4. The Court granted Appotronics' Motion for Alternative Service on September 16, 2019, ECF No. 6, and on September 27, 2019, Appotronics served Delta both by service upon its prosecution counsel, Mr. Evan R. Witt ("Mr. Witt"),[4] and by publishing the Complaint in The Washington Times by September 27, 2019. ECF Nos. 15,16.

On October 15, 2019, Delta filed an unopposed motion for extension of time to respond to Appotronics' Complaint, which was granted by The Honorable Magistrate Judge Lawrence R. Leonard on October 17, 2019. ECF Nos. 17, 19. On November 18, 2019, Delta filed its answer to Appotronics' Complaint as well as a counterclaim seeking correction of patent inventorship of the '511 Patent ("Answer and Counterclaim"). ECF No. 20. On December 9, 2019, Appotronics filed its response to Delta's counterclaim asserted in Delta's Answer and Counterclaim ("Response to Counterclaim"). ECF No. 26. That same day Appotronics also filed an amended complaint reasserting its claim for correction of patent inventorship for the '241 Patent and asserting four additional claims of correction of patent inventorship pursuant to 35 U.S.C. § 256 for the '407 Patent; the '335 Patent; the '363 Patent; and the '810 Patent ("First Amended Complaint"). ECF No. 27. On December 23, 2019, Delta filed an answer to Appotronics' First Amended Complaint and reasserted its counterclaim for the correction of patent inventorship for the '511 Patent ("Answer and Counterclaim to First Amended Complaint"). ECF No. 29.

The next day on December 24, 2019, Delta filed the instant motion to transfer venue to the

---

[4] Appotronics filed an affidavit of service on October 14, 2019, which states that a private process server served Mr. Witt at his place of employment, Kirton McConkie in Salt Lake City, Utah on September 26, 2019. ECF No. 16.

Northern District of California ("Motion to Transfer") as well as a memorandum in support of its Motion to Transfer ("Memorandum in Support"). ECF Nos. 30, 31. On January 7, 2020, Appotronics filed a memorandum in opposition to Delta's Motion to Transfer ("Opposition"). ECF No. 33. On January 13, 2020, Delta filed its reply to Appotronics' Opposition ("Reply"). ECF No. 36. That same day, Appotronics filed its response to the counterclaim asserted in Delta's Answer and Counterclaim to First Amended Complaint ("Response to Counterclaim to First Amended Complaint"). ECF No. 35.

In response to Delta's Reply, Appotronics filed a motion to strike Delta's new ground for personal jurisdiction, or for leave to file a sur-reply in response ("Motion to Strike or File Sur-Reply"). ECF No 37. In its Motion to Strike or File Sur-Reply, Appotronics alleged that Delta had introduce a new personal jurisdiction argument which Appotronics previously did not have a chance to respond to in its Opposition. ECF No. 37, at 2–4. Appotronics argued that this new argument raised in Delta's Reply should be struck or alternatively the Court should allow Appotronics the opportunity to present its own arguments in a sur-reply. Id. at 4. On January 28, 2020, Delta responded to Appotronics' Motion to Strike or File Sur-Reply stating that its Reply discusses the same facts and law presented in Delta's Memorandum in Support in more detail based on Appotronics' positions outlined in its Opposition. ECF No. 39, at 2–3. Delta also stated that it does not oppose Appotronics' alternative request to file a short and limited sur-reply. Id. at 4. On February 3, 2020, the Court granted Appotronics' request to file a sur-reply but did not strike Delta's allegedly new argument, ECF No. 40, and Appotronics filed its sur-reply to Delta's Reply on February 18, 2020 ("Sur-Reply"). ECF No. 44. The Court heard oral argument on Delta's Motion to Transfer on July 13, 2020. For the reasons that follow, the Court denied Delta's Motion to Transfer.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." The decision to transfer venue is committed to the sound discretion of the district court. S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956). In considering a motion to transfer, the court makes two inquiries: (1) whether the claims could have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses support transfer. Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). "The first part of the test requires the movant to 'establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district.'" Seaman v. IAC/InterActiveCorp, Inc., No. 3:18-CV-401, 2019 WL 1474392, at *3 (E.D. Va. Apr. 3, 2019) (internal citations omitted). "The second part of the test requires the consideration of several factors, which are: '(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.'" Id.

### IV. DISCUSSION

As stated above, in considering Delta's Motion to Transfer, pursuant to 28 U.S.C. § 1404(a), the Court must make two separate inquiries: (1) whether Appotronics' claims might have been brought in the Northern District of California, the proposed transferee district, and, if so, (2) whether the interest of justice and the convenience of the parties justify transfer to that district. See Koh, 250 F. Supp. 2d at 630. Because this Court concludes that the Northern District of California is not an appropriate transferee district under the first prong, the Court need not consider whether it is a convenient forum under the second prong.

### A. THE ACTION COULD NOT HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA

As a threshold matter, Appotronics disputes whether this action could have been brought in the Northern District of California. "For the purposes of [S]ection 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." Starr Indem. & Liab. Co. v. Brightstar Corp., 324 F. Supp. 3d 421, 431 (S.D.N.Y. 2018); Koh, 250 F. Supp. 2d at 630 ("In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district.").

In the instant case, the parties do not contest that the Northern District of California would have had subject matter jurisdiction over this dispute as the underlying causes of action—correction of patent inventorship—arise under federal law. 28 U.S.C. §§ 1331, 1338. However, the parties disagree whether Delta has established that it is subject to the Northern District of California's personal jurisdiction.

#### 1. Legal Standard

"Federal Circuit law applies to the determination of whether a district court has personal jurisdiction over a defendant in a patent case." Glob. Touch Sols., LLC v. Toshiba Corp., 109 F. Supp. 3d 882, 890 (E.D. Va. 2015) (citing Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed.Cir.2008)). "To assert personal jurisdiction over an out-of-state defendant in a patent-related dispute, a court must resolve two inquiries: 'whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process.'" Ali v. Carnegie Inst. of Washington, 967 F. Supp. 2d 1367, 1376 (D. Or. 2013), aff'd, 684 F. App'x 985 (Fed. Cir. 2017), and aff'd, 684 F. App'x 985 (Fed. Cir. 2017), and aff'd, 684

F. App'x 985 (Fed. Cir. 2017) (quoting Genetic Implant Sys., Inc. v. Core–Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997)). In this case, these inquiries merge because "California's long-arm statute is co-extensive with federal due process requirements, [and therefore] the jurisdictional analyses under California law and federal law are the same." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process.").

"The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.'" Glob. Touch Sols., LLC, 109 F. Supp. at 890 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945))). "Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction." LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction exists over a defendant foreign corporation—such as Delta—only where that "corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 138-39 (2014). General jurisdiction requires much more than a mere "stream of commerce" or "an in-state subsidiary or affiliate." Id. at 132, 136. In fact, a corporation's contacts "must arise from the [corporation's] general, more persistent, but unrelated contacts with the State." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). "'[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than

9

for specific jurisdiction.'" Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005) (quoting ALS Scan, Inc., 293 F.3d at 715).

In contrast with general jurisdiction, specific jurisdiction exists when the defendant foreign corporation's contacts with the state are also the basis for the suit. Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp., No. 17CV87-GPC(MDD), 2017 WL 1838955, at *2 (S.D. Cal. May 8, 2017) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984))). In order to determine if specific jurisdiction exists, courts must apply the following three-prong test: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc., 293 F.3d at 712; Cognitronics Imaging Sys., Inc. v. Recognition Research Inc., 83 F. Supp. 2d 689, 694 (E.D. Va. 2000).

Moreover, "[i]f personal jurisdiction is proper for a corporate defendant, then venue is also proper: '[U]nder § 1400(b) [and] § 1391(c), the tests for venue and personal jurisdiction are interchangeable for corporations.'" MidAtlantic Int'l Inc. v. AGC Flat Glass N. Am., Inc., No. 2:12CV169, 2013 WL 2240536, at *2 (E.D. Va. May 20, 2013); Belden Techs., Inc. v. LS Corp., 626 F. Supp. 2d 448, 460 (D. Del. 2009) ("[T]he court finds that venue hinges on the resolution of the personal jurisdiction question.").

2. **The Parties' Arguments**

In this case, Delta argues that Appotronics could have brought this action in the Northern District of California because venue is proper, and the proposed transferee forum can assert specific personal jurisdiction over Delta.[5] Specifically, Delta argues that venue in the Northern

---

[5] In its briefings, Delta does not attempt to argue that it has "continuous and systematic" contacts with the state of California for the Northern District of California to assert general personal jurisdiction over Delta. Delta only argues that the Northern District of California has specific personal jurisdiction over it.

District of California is proper under 28 U.S.C. § 1391(c)(3), because Delta, a Taiwanese company, "can be sued in any judicial district." ECF No. 31 at 7 (quoting 28 U.S.C. § 1391(c)(3)). Similarly, Delta argues that the Northern District of California may assert specific personal jurisdiction over Delta because: (1) the research and development activities giving rise to the present inventorship dispute occurred in and are intimately tied to the Northern District of California because Appotronics CEO and founder—Dr. Li, who is the alleged inventor for five of the patents at issue—lives and works there; (2) Delta purposefully directed its activities towards Dr. Li and the Northern District of California through its dealing and exchanges with Dr. Li in California; (3) the only written agreement entered by the parties—the MNDA—is governed by California law and was signed by Dr. Li who resides in California; and (4) Delta has subsidiary located in the Northern District of California. ECF Nos. 31, 36.

Delta relies on several cases to support its claim for specific jurisdiction. Specifically, Delta cites Global Touch Solutions, LLC, 109 F. Supp. 3d at 889–91, 895–96, to support its claims that (1) Delta's California subsidiary helps establish personal jurisdiction, ECF No. 31 at 7, and (2) that Delta purposefully directed its activities towards Dr. Li and the Northern District of California through its dealings and exchanges with Dr. Li, including the negotiation and execution of the MNDA, ECF No. 36 at 3. Delta also relies on federal case law outside of the Eastern District of Virginia to support its claim that specific jurisdiction over a defendant in an inventorship dispute is proper: "(1) where the defendant interacted with a purported inventor in California, the transferee forum, (2) the parties entered into a confidentiality agreement related to the dispute in California, and (3) purported development of the disputed patent-in-suit took place in California." ECF No. 36 at 4–5 (citing Universal Stabilization Techs., Inc, No. 17CV87-GPC(MDD), 2017 WL 1838955; Cray Inc. v. Raytheon Co., 179 F. Supp. 3d 977 (W.D. Wash. 2016); Monster Cable Products, Inc. v. Euro.flex S.R.L., 642 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009)).

Appotronics argues that Delta failed to offer any basis for personal jurisdiction, because such basis does not exist. ECF No. 33 at 6. In fact, Appotronics argues that the Northern District of California has neither general personal jurisdiction nor specific personal jurisdiction over Delta. Appotronics first argues that there is no general personal jurisdiction as Delta is not incorporated in California, nor does it have its principal place of business there. ECF No. 33 at 8. More importantly, Appotronics argues that there is no general jurisdiction over Delta because has failed to demonstrate that any affiliations it has with California are so "continuous and systematic" as to render it essentially at home in the forum state. Id. (citing Daimler, 571 U.S. at 138–39). Appotronics further contends that the presence of a California subsidiary is not enough to create general jurisdiction over Delta. Id. Appotronics next argues that there is no specific personal jurisdiction over Delta, as Delta's contacts with the Northern District of California are not related to instant action. Id. at 9. Instead, Appotronics argues that the only contacts Delta has alleged are the existence of Delta's California-based subsidiary and unspecified "business activities" in California—neither of which arise out of or relate to this inventorship dispute. Id. Appotronics also rejects Delta's reliance on "the holding of Global Touch Solutions" because Delta has failed to allege how its California subsidiary is related to the instant action to establish personal jurisdiction. Id. at 7–8 (Glob. Touch Sols., 109 F. Supp. 3d at 894 (finding that there was personal specific jurisdiction based on the fact that the patent infringement claims related to products that were associated with defendant's long-standing distribution network in California as well as defendant's California-based subsidiary)).

In Appotronics' Sur-Reply, Appotronics refutes Delta's claims that it purposefully availed itself to Dr. Li's residence in California. ECF No. 44 at 2. Appotronics argues that: (1) Delta's contacts with California, not Appotronics' contacts, are relevant and nothing in the record establishes that Delta knew where Dr. Li lived or that it took any action with regard to Dr. Li's

residence; (2) that Dr. Li's presence in California is entirely tangential to the collaboration between the two parties, and it is insufficient to establish specific jurisdiction as Delta did not purposefully avail itself to Dr. Li's personal residence in California; and (3) the choice of law provision of the MNDA does not establish jurisdiction because the claims in the instant action do not arise out of the MNDA. Id. at 2–4. Appotronics also argues that the parties' negotiations occurred exclusively in Taiwan and China, where Dr. Li signed the MNDA; and that while Dr. Li may have communicated with Delta from California, Dr. Li could not have done any technical work on the project because he did have any testing or design equipment in California. Id. at 2–3. Because Delta has failed to prove it purposefully directed its actions to California, Delta's reliance on the cases—Universal Stabilization Techs., Inc. v. Advanced BioNutrition Corp, Cray Inc. v. Raytheon, Co., and Global Touch Solutions—are misplaced. Id. at 4.

### 3. Discussion

The Court finds that it cannot transfer this action to the Northern District of California—or any federal district court in California for that matter—because the Northern District of California cannot exercise specific personal jurisdiction over Delta. Although personal jurisdiction may be established by means of general or specific jurisdiction—the Court need not discuss whether the Northern District of California can assert general personal jurisdiction over = Delta, because Delta, in its Reply, seems to concede that its contacts with the state of California are insufficient for general personal jurisdiction. ECF No. 36 at 2–6.

Thus, because general jurisdiction is lacking, the Court turns to specific jurisdiction. As discussed above, the exercise of specific personal jurisdiction satisfies due process where (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities in the forum, and (3) the assertion of personal jurisdiction is reasonable and fair. ALS Scan, Inc., 293 F.3d at 712.

The Court finds that Delta has not met its burden of showing that Delta would have been subject to the specific personal jurisdiction of the Northern District of California. In fact, there is little here to suggest that Delta purposefully directed its activities towards the state of California and Dr. Li—a California resident—and that Appotronics' correction of inventorship claims arose out of or related to those activities. This is because Delta only provides the Court with broad statements such as "[a]ll the research and development that led to the inventions disclosed in the respective patents at issue in this case indisputably occurred either in the Northern District of California. . .China. . .or Taiwan," ECF No. 31 at 5, and that "Delta purposefully directed its activities towards Yi Li and the Northern District of California through its dealings and exchanges with Yi Li, including the negotiation and execution of the California-based MNDA and the exchange of confidential information pursuant to the MNDA[,]" ECF No. 36 at 3. However, Delta has failed to provide any specific evidence to support these allegations or to refute Appotronics' sworn statement from Dr. Li, which states that the parties engaged in negotiations regarding the light source project exclusively in China and Taiwan; that Dr. Li signed the MNDA in China; that during the light source project Dr. Li did not conduct any technical work on the project in California because he lacked the necessary equipment; and that the solicitation and exchange of any proprietary information between the parties occurred in Taiwan and China. ECF No. 44-1.

Based on the facts presented to the Court, the Court finds that Delta did not purposefully avail itself to the state of California and Dr. Li's residence of such state. Dr. Li's presence in California is "the unilateral activity of another party or third person" and which is insufficient to satisfy the purposeful availment requirement of specific personal jurisdiction. Burger King Corp., 471 U.S. at 475. In fact, the Court finds that Delta's alleged activities towards the state of California and Dr. Li are distinguishable from the defendant's activities in the cases Delta cited— Universal Stabilization Techs., Inc., No. 17CV87-GPC(MDD), 2017 WL 1838955 and Cray Inc.,

179 F. Supp. 3d 977—because again Delta has failed to demonstrate that (1) Delta substantially interacted with Dr. Li, the purported inventor of five of the patents at issue, in California; (2) Delta and Appotronics negotiated the light source project and the subsequent MNDA in California rather than in China and Taiwan; (3) that Dr. Li developed the light source in California; and (4) that Delta solicited proprietary information from Appotronics in California.

In sum, the Court concludes it that the Northern District of California does not have personal specific jurisdiction over Delta and therefore venue is not proper under 29 U.S.C. § 1391. Thus, this action, as presently constituted, could not have been brought originally in that forum. Consequently, Delta has not satisfied the first prong of the Section 1404(a) analysis. As such, the Court need not consider the second inquiry—convenience of the parties and interests of justice—under 28 U.S.C. § 1404. Accordingly, the Court must deny Delta's Motion to Transfer. ECF No. 30.

## V. CONCLUSION

For the reasons set forth herein, the Court **DENIES** Delta's Motion to Transfer. Id. The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
July 22, 2020