1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                            N DIVISION

 3

 4   APPOTRONICS CORPORATION        )
     LIMITED.                       )
 5                                  )
               Plaintiff,           )
 6                                  )
     v.                             )     Civil Action No.:
 7                                  )       2:19cv466
     DELTA ELECTRONICS, INC.,       )
 8                                  )
               Defendant.           )
 9

10

11              TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

12             (Hearing on Motion to Transfer Venue)

13
                            Norfolk, Virginia
14                           July 13, 2020

15

16   BEFORE:   THE HONORABLE ROBERT G. DOUMAR
               United States District Judge
17

18   Appearances: (Via Zoom)

19        MAYER BROWN, LLC
                    By: GARY MITCHELL HNATH
20                  By: JING ZHANG
                        Counsel for Plaintiff
21
          PILLSBURY WINTHROP SHAW & PITTMAN, LLC
22                  By: CHRISTOPHER KAO
                        BROCK S. WEBER
23
          GOLDSTEIN, EDGAR & REAGAN
24                  By: FRANK ALWIN EDGAR, JR.
                        Counsel for Defendant
25
```

2

```
1                    P R O C E E D I N G S

2

3           (Proceedings commenced at 10:02 a.m. as follows:)

4

5           COURTROOM DEPUTY CLERK:  Civil Action No. 2:19cv466,

6  Appotronics Corporation Limited v. Delta Electronics, Inc.

7           For the plaintiff, Mr. Hnath, Ms. Zhang, are you ready

8  to proceed?

9           MR. HNATH:  Yes, we are.

10          THE COURT:  For defendants, Mr. Weber, Mr. Kao, Mr.

11 Edgar, are you ready to proceed?

12          MR. HNATH:  Yes, we are.

13          COURTROOM DEPUTY CLERK:  Thank you.

14          THE COURT:  Mr. Edgar, are you going to argue it for

15 Delta?  Who is going to be arguing for Delta?

16          MR. KAO:  This is Chris Kao, Your Honor.  I'll be

17 arguing for Delta.

18          THE COURT:  All right, Mr. Kao, go ahead.  It's your

19 motion, isn't it?

20          MR. KAO:  Yes.

21          THE COURT:  Okay.

22          MR. KAO:  Right.  Your Honor, we have brought this

23 motion to transfer venue for the Northern District of

24 California, and I believe there are two reasons to transfer the

25 case to the Northern District of California consistent with the
```

1   case law from the Eastern District of Virginia and the Federal

2   Circuit.

3            First, the plaintiff's choice of venue here should be

4   accorded little to no weight because there's simply, there's no

5   connection between this case and the Eastern District of

6   Virginia.  Neither of the parties to this case have any offices

7   in the Eastern District of Virginia, any business in the Eastern

8   District of Virginia.  The plaintiff is a company based in

9   China.  The defendants, my client, Delta Electronics, is based

10  in Taiwan.  So none of the parties have any connection to the

11  Eastern District of Virginia.

12           Second, none of the witnesses have any connection to

13  the Eastern District of Virginia or reside in the Eastern

14  District of Virginia.  All of the witnesses for Delta

15  Electronics, the defendant, work and live in Taiwan.  Most of

16  the defendants -- the plaintiff's witnesses live and work in

17  China.  The one witness who is relevant in this case that is

18  located in the United States is actually located in the Northern

19  District of California, and that is the plaintiff's CEO, and he

20  resides in the Northern District of California.

21           THE COURT:  What's he got to do with this?

22           MR. KAO:  Excuse me?

23           THE COURT:  What's he got to do with the patent

24  problem?

25           MR. KAO:  So he is the inventor on the Appotronics

1  patent that's at issue in this case.  And not only that, he is

2  the purported inventor -- this is an inventorship case.  The

3  plaintiff's argue that Mr. Yi Li, who lives in the Northern

4  District of California, that he is the inventor of all of my

5  client's, Delta's, patents.  So he's one of the critical if not

6  one of the most important witnesses in the case.  And --

7             THE COURT:  What's his address?

8             MR. KAO:  He is located in Pleasanton, California.

9             THE COURT:  Where?  Pleasanton?  Is there any -- well,

10  he's a resident of Pleasanton.  What's his address there?

11            MR. KAO:  I don't have his home address.  The U.s.

12  Patent Office records just list the city in which you live, and

13  he lists Pleasanton, California.  And in fact, he lists not only

14  in the patent in this case, but in every single patent that he's

15  filed with him as an inventor, it lists him as being in

16  Pleasanton, California.

17            THE COURT:  So based on the records of the Patent

18  Office, this witness who you say is essential -- so what is this

19  witness going tell us?

20            MR. KAO:  Well, presumably he's going to tell us what

21  role he had in the invention of all of the patents at issue in

22  the case, the five patents that the plaintiff has brought to

23  issue and the one patent that my client Delta has brought to

24  issue, and he would have testimony relevant to all six of those

25  patents.

```
 1              THE COURT:  So he is an essential witness, you
 2   indicate, in this case, and based on that, he's an essential
 3   witness for the plaintiff and you want the case transferred why?
 4              MR. KAO:  Because not only would the case be more
 5   convenient for that witness because he's located in the Northern
 6   District of California.
 7              THE COURT:  I think it's very nice of you to want to
 8   do something for the plaintiff.  Isn't that wonderful?  What
 9   else do you want to do for the plaintiff?
10              MR. KAO:  It's also more convenient for all of the
11   remainder of the witnesses of the case, not just him, but all of
12   the witnesses that are located in either China or Taiwan,
13   respectively.
14              THE COURT:  Well, like we're seeing now, Zoom has
15   changed the world.  We're on Zoom now.  And this is a civil
16   case.  There's no reason we can't take testimony by Zoom if it's
17   necessary.
18              Secondly, this is the Eastern District of Virginia,
19   and as you know, unless you tell me that Delta has a registered
20   agent -- where is the registered agent for Delta?
21              MR. KAO:  Delta Electronics is based in Taiwan, so
22   there is no registered agent for Delta Electronics in the United
23   States then.
24              THE COURT:  Then who can take and receive subpoenas on
25   behalf of Delta in the United States?
```

1         MR. KAO:  So in most cases, what parties do is serve

2    subpoenas and the like on Delta's U.S. subsidiary, which is

3    based in the San Francisco Bay area.

4         THE COURT:  So the only way you can get jurisdiction

5    is through a subsidiary; is that correct?

6         MR. KAO:  That's one way.  The other way in this

7    case --

8         THE COURT:  The subsidiary doesn't get the master in,

9    does it?  I mean, you can sue a subsidiary and serve a

10   subsidiary and that's service on the master?

11        MR. KAO:  Not in all instances, no.

12        THE COURT:  Not in any instance in the Fourth Circuit.

13   Corporations are very, very strict in this circuit.  Or has

14   been.  I don't know.  Things are changing rapidly.  But in the

15   past they were very strict in trying to pierce the corporate

16   veil, so to speak, if it's a separate corporation that's a

17   separate corporation.  In fact, you don't have a registered

18   agent or anyone in the United States, do you?

19        MR. KAO:  Correct.  That is true.

20        THE COURT:  All right.  Then the statute says -- where

21   does the statute say if you have a patent claim where it can be

22   brought?  Did you look at the statute?

23        MR. KAO:  Yes.  So in the absence --

24        THE COURT:  The statute requires bringing it -- you

25   know, it's one of the most unusual statutes that I think I've

1  ever seen, because it brings you to a particular court.  The

2  Eastern District of Virginia.  In fact, I don't think there's

3  another statute that I've ever come across that provided

4  jurisdiction in a particular court.  Why Congress felt the

5  particular court was appropriate, long ago they thought the

6  District of Columbia was a particular court, then they -- I

7  assume they moved it to the Eastern District of Virginia when

8  the Patent Office moved next door.  So that's where we are.

9          In any event, this Court has cases in Alexandria,

10  which is not so far from Dulles.  And my guess is it's less

11  problem, if it's necessary, I could hold the court in

12  Alexandria.  I've done it many times before.  We've held court

13  in Alexandria before, mostly in Alexandria cases.  I've even

14  held court in the Eastern Shore of Virginia.  All you have to do

15  is issue an order and hold the court there.  So the question

16  really boils down to where is the jurisdiction in this case.

17  You're saying the forum non conveniens should overrule the act

18  of Congress, correct.

19          MR. KAO:  No, Your Honor, that's not what I'm saying.

20  And I'm sorry that .

21          THE COURT:  Well, does Congress say where the

22  jurisdiction is?

23          MR. KAO:  No.  That's not correct, Your Honor.  The

24  statute provides that an action may be brought in the Eastern

25  District of Virginia, it does not require that an inventorship

1  dispute be brought in the Eastern District of Virginia.

2          THE COURT:  So you're saying since the statute does

3  not specifically say you have to bring it in the Eastern

4  District of Virginia, where do you bring it?  In Taiwan?  Is

5  that what you're saying?

6          MR. KAO:  No.  You would bring it -- you may bring it

7  in the Eastern District of Virginia or you may bring it where

8  there is specific personal jurisdiction over the defendant.

9          THE COURT:  Where is the personal jurisdiction?

10          MR. KAO:  Well, here, given that all of the

11  activities, all of the events that occurred, to the extent they

12  occurred in the United States --

13          THE COURT:  I'm talking about Taiwan.  Am I mistaken?

14  So what's --

15          MR. KAO:  Yes, Your Honor.

16          THE COURT:  So what's in the United States pertaining

17  to these patents?

18          MR. KAO:  The inventor that the plaintiff claims is

19  the inventor of the patents was in California, and they claim

20  that he came up with these ideas in California.  That's where he

21  resides and that's where he lists on all of the patents.

22          THE COURT:  Oh.  So one of the inventors is -- I'm

23  assuming he's an inventor -- lives in California, the

24  jurisdiction of this case, you indicate, should be in

25  California, correct?

1              MR. KAO:  Correct.

2              THE COURT:  Nothing would give me greater pleasure

3    than to send this case to California, believe me.  Nothing would

4    give me greater pleasure.  But the question is not my pleasure,

5    the question is is there any jurisdiction in California?  I

6    couldn't find it.  You say, ah, the president or the CEO lives

7    in California therefore we can bring the suit in California.  If

8    the janitor lives in California could you bring the suit in

9    California?  No.

10             MR. KAO:  Sir, I keep losing the sound.

11             THE COURT:  I'm sorry.  I don't mean for you to --

12             COURTROOM DEPUTY CLERK:  It's on your end, Mr. Kao.

13             THE COURT:  Have you got --

14             MR. KAO:  We have tried -- I can't hear anything.

15             COURTROOM DEPUTY CLERK:  It's on the attorney's end,

16   it's not our end.  You can disconnect and reconnect.

17             MR. KAO:  Okay.  Let me do that.

18             COURTROOM DEPUTY CLERK:  It's not on our end.  We're

19   perfect on our sound here.

20             MR. KAO:  Let me try again.

21             THE COURT:  He said he can't get the sound.  I think

22   it's very important.  And we can test that out.

23             COURTROOM DEPUTY CLERK:  We'll have him disconnect and

24   reconnect.

25             (Pause in the record.)

```
 1            THE COURT:  Okay.  Says he couldn't hear the sound,

 2   Ms. Baxter, but I could certainly see him on the screen.  But I

 3   don't see him now.

 4            COURTROOM DEPUTY CLERK:  Yes, sir.  He just came, he's

 5   just now coming back in.

 6            THE COURT:  Can you hear now?

 7            MR. KAO:  Yes, I can hear now.  I've joined by phone.

 8            COURTROOM DEPUTY CLERK:  Oh, good.

 9            THE COURT:  Okay.  All right, sir.  You go ahead.  I

10   interrupted you too much.  Go ahead, sir.

11            MR. KAO:  Sure.  So I think getting back to the point

12   that I last heard, there is specific jurisdiction over the

13   defendant Delta in this case because the activities that are at

14   the heart of this case occurred -- to the extent they occurred

15   anywhere in the United States, they occurred in California, not

16   in the Eastern District of Virginia.  And that is because the

17   inventor, one of the two inventors that the plaintiff says

18   should be inventors resides and worked in California.  And he is

19   listed that way in all of the patents in the case.

20            THE COURT:  So --

21            MR. KAO:  In addition --

22            THE COURT:  -- the other claimed inventor lives where?

23            MR. KAO:  He lives in China.

24            THE COURT:  Is that in China or Taiwan?

25            MR. KAO:  The other claimed inventors that the
```

1  plaintiffs claim is an inventor is in China.

2          THE COURT:  So the one inventor, the only inventor

3  that's in the United States is the one located in California,

4  correct?

5          MR. KAO:  That's correct.

6          THE COURT:  Well, the question -- we're holding this

7  on Zoom.  My question to you is I see California just released

8  100 -- I mean 100 prisoners I believe?  Or was it a thousand?  I

9  can't remember how many according to the news broadcast.  And

10 California has a runaway problem with the pandemic.  Does that

11 make any difference to you, or do you --

12         MR. KAO:  No, Your Honor.  Those are not factors under

13 the law for transfers for convenience.  And again --

14         THE COURT:  The convenience of the parties should not

15 take into consideration the -- suppose it was under siege in

16 California?  Would that make any difference?  I don't know.

17 California has some different ideas as to what is right and

18 just, including how bad the police protections are.  So the

19 question -- or how good they are.  Does that make any

20 difference?

21         MR. KAO:  No, Your Honor.  That does not make any

22 difference.  The question for a motion to transfer --

23         THE COURT:  So the question is the situation or the

24 area where the cases is sought to be transferred, whatever the

25 condition of that area is makes no difference, correct?

1           MR. KAO:  That's correct, Your Honor.

2           THE COURT:  So --

3           MR. KAO:  For a motion to transfer --

4           THE COURT:  Go ahead.

5           MR. KAO:  The issue is where is the location that is

6    most convenient for the parties and witnesses for the trial of

7    the matter.  And in this case, I think it is indisputable that

8    for all of the witnesses, particularly the witness in

9    California, but the witnesses in China and in Taiwan, it would

10   be far more convenient for them to have this case proceed in

11   California, which is much closer to them and easily reachable by

12   a direct flight versus the lengthy time it will take them to get

13   to the Eastern District of Virginia.  Those are the factors that

14   are important.  And consistently courts in the Eastern District

15   of Virginia have transferred cases with this very same fact

16   pattern where there are no facts that are -- no facts and no

17   witnesses that are relevant to the Eastern District of Virginia,

18   but where all of the facts and the witnesses are located closer

19   to the Northern District of California.  In the Macronix case

20   which we cite, in the Divergence Tech (phonetic) case that we

21   cite, courts in the Eastern District of Virginia transfer cases

22   to the Northern District of California when those cases involved

23   witnesses from China, Hong Kong, Taiwan, for example, and other

24   witnesses located in California.  And that should be -- that is

25   the test, and that should be what's followed here.

1          THE COURT:  Interesting point.  So the statute which

2   was enacted by Congress should be overridden of course, you say,

3   when you don't have an agent, by the convenience of the

4   defendant in interviewing a witness for the plaintiffs; is that

5   correct?

6          MR. KAO:  Again, it's not overriding the statute.  The

7   statute allows for inventorship cases to be brought in the

8   Eastern District of Virginia, it doesn't --

9          THE COURT:  How many witnesses are there, do you

10   think, Mr. Zhang?  Not Mr. Zhang, excuse me.  Mr. Kao.  How many

11   witnesses in this case?

12          MR. KAO:  So at a minimum there will be seven

13   witnesses, but there may be 10 witnesses.

14          THE COURT:  And where are these witnesses located?

15          MR. KAO:  So of the 10 witnesses that might be

16   relevant, one of them is located in California and the other

17   nine are located either in China or Taiwan.

18          THE COURT:  All right.  So you're saying that

19   because -- how much longer does it take to fly to California?

20   What part of California do you want to transfer it to?

21          MR. KAO:  The Northern District of California, which

22   is the San Francisco area.

23          THE COURT:  You mean you want to go to San Francisco?

24          MR. KAO:  Yes, Your Honor.

25          THE COURT:  When is the last time you walked down the

1  streets in San Francisco?

2        MR. KAO:  Just this morning, Your Honor, coming to my

3  office.

4        THE COURT:  And were they clear?

5        MR. KAO:  Yes.

6        THE COURT:  Oh, so there weren't any people lying on

7  the streets in San Francisco anymore?  They have cleaned it up?

8  There's no feces or whatever is being reported in our press is

9  not on the streets of San Francisco, it's someplace else?

10        MR. KAO:  No, Your Honor.  That is not an accurate

11  depiction of San Francisco.

12        THE COURT:  The reason I'm very curious is going from

13  one hotel to another, you almost have to take a cab.  Just

14  curious about that.  Because it's very difficult to walk on the

15  streets in the downtown area, or has been in the past.  But I'm

16  not there now.  Things may have changed.  Some time ago I was

17  there, and as you walk down the streets you're grabbed by

18  people.  Literally.  That is no longer the case?

19        MR. KAO:  I have never been grabbed by a person, Your

20  Honor, in San Francisco, but...

21        THE COURT:  Well, I mean, must have been just then.  I

22  could be wrong.  I shouldn't be introducing that anyhow.  It's

23  just that it was an interesting time to go.  Maybe things have

24  changed.  And I'm sure they must have.  So now, anyhow, in

25  essence what you're saying is there's one witness in California,

1  all the remaining witnesses are in Taiwan or China, and the

2  convenience of the parties is to go where the defendant thinks

3  is the best and easiest place to get to.  What is the difference

4  in flying from Dulles or from San Francisco to China?

5       MR. KAO:  So there are direct flights from China,

6  Taiwan or Hong Kong and Taiwan to San Francisco, which are about

7  10 to 11 hours.  I think the flight to Dulles is probably on the

8  order of 14, 15 hours, but then they would need to transfer,

9  obviously, to get to Norfolk from Dulles.

10      THE COURT:  Well, I could hold the case in Alexandria.

11 Done it before.  That's no great problem.  So the Eastern

12 District of Virginia has a wonderful courtroom in Alexandria.

13 Very, very nice courtroom.  And I think probably there's a lot

14 of witnesses coming from California and -- actually have to go

15 to court instead of appear by Zoom, which we're doing now, that

16 I probably would transfer it for the convenience of the

17 individuals flying in because it would be much easier.  Be

18 nothing but taking a little cab if you thought it was necessary

19 from Dulles there, and it's not far.  So I'm not seeing any

20 great problem with relation to anything other than the flying

21 time.  So the flying time was roughly about three hours

22 difference.  I understand your position.  I think that's -- so

23 you say you're going to have to fly or somebody's going to have

24 to fly nine witnesses in -- or eight witnesses, or -- one is in

25 California and the other nine are in China or Taiwan.  So I can

1   understand your point.  I think it's an excellent point.

2           Let me hear what the plaintiff has to say about the

3   statute that allows them to sue Delta.  The only place I could

4   see where they could possibly sue them is in the Eastern

5   District of Virginia.  There's no other place in the United

6   States they could sue them.  Hope they could sue them in the

7   jurisdiction in Taiwan, maybe China, I'm not sure which.  And so

8   I'm having some problems.  But let me hear what the plaintiff

9   has to say.

10          MR. HNATH:  All right.  Good morning, Your Honor.

11  This is Gary Hnath.  Can you hear me okay?

12          THE COURT:  Yes.  Sure.

13          MR. HNATH:  Okay.  Great.  So we sued, we brought this

14  inventorship suit in the only court that we could bring it in,

15  which was the Eastern District of Virginia.  And Congress

16  created the ability to bring inventorship cases involving U.S.

17  patents in the court where the Patent Office is located, and

18  that's why we brought it in the Eastern District of Virginia.

19          So in a transfer motion, there are two issues that

20  need to be considered.  First of all, could the case originally

21  have been brought in the transferee forum; here, the Northern

22  District of California.  And the answer is no.  The Northern

23  District of California would have to have jurisdiction over

24  Delta.  And in this case, there is no general jurisdiction over

25  Delta.  I don't think the parties are -- Delta's not arguing

1  that.  That's not an issue.  Delta doesn't have any registered

2  agent in California.

3        And as to specific jurisdiction -- and this is laid

4  out in the briefs -- Delta has the burden, and it's their burden

5  of showing that Delta performed an act which purposefully

6  availed itself of the privilege of conducting activities in

7  California, the claim must arise out of the activities, and the

8  exercise of jurisdiction must be reasonable.  And here, at most,

9  they're relying on Appotronics' activities, not Delta's

10 activities.  There's no evidence in the record presented by

11 Delta that any research took place in the United States.  In

12 fact, the record is that all of the relevant activities, the

13 collaboration between Delta and Appotronics and the research

14 took place in China and Taiwan.  Dr. Yi had a residence part of

15 the year in California at one time, but he submitted a

16 declaration in which he explains that none of his time in

17 California was related to the Delta project.  In fact, he

18 doesn't even have any test equipment or design equipment in

19 California.  And to the extent he may have made an occasional,

20 sent an email or made a phone call from California, he never

21 represented to Delta that he was residing part-time in

22 California.  There's no evidence that they reached out to him

23 knowing that he was in California.  There's no evidence of any

24 inventorship activities in this case that took place in

25 California.  The doctor's residence is irrelevant here.  It does

1  not establish personal jurisdiction over Delta.  And again, the

2  key is that personal jurisdiction has to relate to Delta's

3  activities, not to Appotronics' activities.

4          So if there's no jurisdiction over Delta in

5  California, that is the end of the matter.  You don't even get

6  to all of the other transfer factors, the convenience of the

7  parties, the travel and so forth and so on.  If you did reach

8  those factors, we think that those factors do not favor

9  transfer.  There is a connection to Virginia.  This case was

10 brought in Virginia, and it was brought in Virginia because

11 Delta got its patent in the Eastern District of Virginia, and so

12 there is a connection to the forum.

13         We're not arguing -- and it's kind of them to be

14 concerned about Dr. Yi, but he has no problem traveling to the

15 Eastern District of Virginia as the plaintiff, and all of the

16 other witnesses, as has been noted, are in China or Taiwan, and

17 we're talking about a few hours at the most for what would be

18 one trial.  Any depositions, the parties have agreed, will take

19 place where the witnesses, proximate to where the witnesses work

20 and live, in China or Taiwan.  In the case of China, they need

21 to be taken in Hong Kong because you cannot take depositions in

22 China.

23         So we believe that the motion should be denied, No. 1,

24 because this case, there's no jurisdiction over Delta in

25 California, and so the case could not have been brought in

1  California even if we wanted to in the first place.  And second

2  of all, we brought this case in the Eastern District of

3  Virginia, and we believe that the case should stay here.

4  There's no reason to disturb that original choice, and the

5  convenience of the parties is a weak factor and does not

6  override the choice of forum in this case and the connection to

7  this forum, which is where the Patent Office is located.

8          THE COURT:  Thank you very much.  I'll give you an

9  opportunity to reply about it, Mr. Kao.

10          MR. KAO:  Yes.  Thank you, Your Honor.  The plaintiff

11  is completely misstating the law on motions to transfer.  The

12  convenience of the parties and the witnesses is the paramount

13  factor, not an irrelevant factor as Mr. Hnath just mentioned.

14  It is the most important factor.  And that is consistent in all

15  of the cases that are cited in the briefing, Your Honor.  And in

16  fact, the plaintiff's choice of forum is entitled to little or

17  no weight.  And again, that is consistent in all of the cases

18  cited by both parties in this case.  And that is because there

19  is simply no connection between the facts of this case and the

20  Eastern District of Virginia.  And it is true that the Patent

21  Office is located in the Eastern District of Virginia, but that

22  is not a factor.  If that were the case, then every single

23  patent infringement case in the country should be brought in the

24  Eastern District of Virginia, and that's just not the law.  So

25  on the law, the plaintiff is wrong on the motion to transfer

1   factors.

2          So let me just address one more time the

3   jurisdictional argument, which is the main argument that I think

4   plaintiff makes.  And again, there is specific jurisdiction over

5   Delta, and the reason why is, as Mr. Hnath says, the inventor is

6   located in California, and Delta interacted with him while he

7   was in California.  That simply can't be disputed.

8          THE COURT:  What was in California?  Tell me about

9   what you say, what happened in California?

10         MR. KAO:  The inventor that -- the plaintiff --

11         THE COURT:  I'm not asking where the inventor lived,

12  because the inventor could live anywhere.  So you're saying an

13  inventor to a patent confers jurisdiction in relation to

14  anything to do with the patent; is that correct?  Do you have

15  any case --

16         MR. KAO:  That's not what I'm saying, Your Honor.  I

17  would say that Delta -- Delta, my client, interacted with Mr. Yi

18  Li, the inventor, the supposed inventor of these patents while

19  he was in California.  So therefore as a result --

20         THE COURT:  So in this case, depending on what

21  happened in California is what you're saying has nothing to do

22  with China, correct?

23         MR. KAO:  No, that's not what I'm saying.  There are

24  facts relevant to this case that occurred in China and occurred

25  in Taiwan and in California.

1           THE COURT:  Well, what happened in California?

2           MR. KAO:  So California was where the claimed inventor

3    from the plaintiff's perspective was located.  And the plaintiff

4    is saying that he did none of the work relevant to these patents

5    in California, but that's belied by his representations to the

6    Patent Office.  So the U.S. Patent Office, Mr. Yi Li always says

7    that he is based in California.  And that's because he's trying

8    to avoid -- if he'd said that he were located in China, they

9    would have bigger problems with their patents.  So he has

10   represented to the USPTO that he is located in and worked on

11   these patents in California.

12          THE COURT:  Now you're saying he worked on them in

13   California?  Is that what you're saying?

14          MR. KAO:  Yes.  That's what he represented to the U.S.

15   Patent Office.

16          THE COURT:  Your evidence where you have the burden of

17   showing the jurisdiction in California -- I haven't figured this

18   case out, because the statute is clear where the case has to be

19   brought.  So it can't be brought in California.  There's no way

20   on God's earth I figured out how you could bring the case by

21   virtue of the fact that one individual in a company is located

22   in California.  The question is, did the defendant do business

23   in California, because you're going after the defendant, not the

24   plaintiff.  The question is --

25          MR. KAO:  Yes.

1          THE COURT:  -- what jurisdiction did the defendant

2   have in California.

3          MR. KAO:  Yes.  That's correct.

4          THE COURT:  So --

5          MR. KAO:  The defendant, Delta --

6          THE COURT:  Delta has a registered agent in

7   California?

8          MR. KAO:  No.  Defendant Delta does not have a

9   registered agent in California.

10         THE COURT:  All right.

11         MR. KAO:  Defendant Delta --

12         THE COURT:  Does it do business in California?

13         MR. KAO:  Not directly.  It does through its U.S.

14  subsidiary.

15         THE COURT:  So you're saying that you can get

16  jurisdiction by virtue of a subsidiary?

17         MR. KAO:  No, Your Honor.  What I'm saying is there is

18  jurisdiction by virtue of Delta's interactions with this

19  supposed inventor in California.  And if you look at the cases

20  on inventorship which we have cited in our brief, in particular

21  the Cray (phonetic) decision, there are cases where a defendant

22  interacts with a plaintiff's inventor and there is therefore

23  jurisdiction over that defendant based on where one of the

24  inventors was located and there were interactions.

25         In addition, the parties --

```
 1              THE COURT:  The inventor of a patent controls where

 2    the patentee is located; is that correct?

 3              MR. KAO:  To the extent there are interactions between

 4    supposed inventors, then yes.  If there were interactions with

 5    somebody in California --

 6              THE COURT:  If they met in California or said hello in

 7    California that would give you jurisdiction, correct?

 8              MR. KAO:  If they were talking about issues related to

 9    the invention, yes.  Not just that they said hello.

10              THE COURT:  As long as some talk took place concerning

11    the invention, then wherever that talk took place has

12    jurisdiction, according to you.  Is that correct?

13              MR. KAO:  Yes, there would be specific jurisdiction in

14    that instance.

15              THE COURT:  Interesting point.  Well, what if it

16    happens on the telephone?

17              MR. KAO:  Well, if the individual's located in

18    California you're still interacting with that person in

19    California.

20              THE COURT:  So as long as there was a telephone call

21    from China to California that would confer jurisdiction to whom?

22              MR. KAO:  It would confer jurisdiction over the

23    defendant in China, or this case Taiwan, that was communicating

24    with the supposed inventor in California.

25              THE COURT:  So the person in Taiwan, if they had a
```

1  telephone conversation in -- let's remove it to Nevada, for

2  instance.  Telephone conversation concerning this patent in

3  Nevada, then Nevada would have jurisdiction, correct?

4           MR. KAO:  Correct.  They could be sued in Nevada.

5           THE COURT:  So if they had a telephone conversation in

6  New York and China, New York would have jurisdiction, correct?

7           MR. KAO:  Correct.

8           THE COURT:  So any place in the world where they had a

9  telephone conversation there would be jurisdiction?

10          MR. KAO:  There would be specific jurisdiction in the

11  inventorship --

12          THE COURT:  So the jurisdiction is not limited at all

13  to anything other than the fact that somebody lived there or at

14  some point had a conversation concerning the case there,

15  correct?

16          MR. KAO:  Yes.  In this context that's correct.

17          THE COURT:  Okay.  I think I understand your position.

18          Okay.  Anything else you want to add?  I've read the

19  briefs.

20          MR. KAO:  Just one last --

21          THE COURT:  Go ahead.

22          MR. KAO:  Just one last point on this specific

23  jurisdiction issue.  The other reason that I think is relevant

24  which has not been discussed yet is that the parties entered

25  into a contract, an NDA that in the plaintiff's complaint they

25

1   alleged was breached as part of this process.  That contract

2   selects California as the governing law.  So clearly as between

3   the parties, they understood that disputes between them would be

4   governed by California law.  So that is yet another reason for

5   the case to be transferred to California.  The parties'

6   relationship was always going to be governed by California law.

7           THE COURT:  You're saying they designated the

8   California courts?  Which court did they designate?

9           MR. KAO:  No, they did not designate a California

10  court, they selected California law as the choice of law.

11          THE COURT:  Oh.  So that's interesting.  That's

12  interesting.  So the choice of what law applies depends on the

13  jurisdiction of the case; is that correct?

14          MR. KAO:  I'm not sure I understand that.

15          THE COURT:  I love to reduce things to an absurdity.

16  So if they said we're going to apply North Carolina law then the

17  cases would have to go to North Carolina; is that right?

18          MR. KAO:  Not necessarily, Your Honor.

19          THE COURT:  But you're saying that is the jurisdiction

20  where it should go because they said that particular law would

21  apply?  Suppose they said the law of China would apply?  Could

22  it be brought in the United States?

23          MR. KAO:  No, Your Honor.  I'm merely saying that the

24  choice of law in California suggests that the parties in this

25  case wanted California law to apply, and therefore you know that

1   was going to govern their relationship.  So it is, it would be

2   reasonable in the interests of justice to transfer this case to

3   California as a result.  That is the only --

4           THE COURT:  Nothing, as I told you, would give me

5   greater pleasure than to transfer this case to California.

6   Nothing.  But I can't figure out a reason to transfer it.  So

7   far all you've indicated is that the CEO of one of these

8   companies who claims to be one of the inventors of this matter

9   resides in California.  Everyone else resides in Taiwan or

10  China.  And that, I just -- if I could figure out a way for this

11  to be there, the statute indicates the only place in the

12  country, in my opinion, that the plaintiff could bring the case

13  is in the Eastern District of Virginia.  The statute gives him

14  that authority to do so.  And I was trying to figure out if

15  there's any other way to bring it.  And I haven't seen that in

16  the case.  Haven't shown that anything occurred in California

17  that would cause this case to be brought there.  Just couldn't.

18  So I'm having lots of problems with it.  As I read through this

19  material I kept trying to figure out how in the world did we get

20  to California?  And I don't want to mislead you and I don't want

21  to deny Mr. Hnath the opportunity to answer your argument,

22  because I don't think it's essential.  You'll find out in this

23  case that I try to figure out what's the case.  And the reason I

24  gave you an opportunity, I thought maybe you could come up with

25  something to convince me to be able to send this case to

1  California.  I certainly don't want to sit and try a difficult

2  patent case that goes -- because they are difficult.  They are.

3          So unfortunately, we have to go ahead in Virginia.

4  And I like to tell people where I stand.  I'm going to write an

5  opinion.  I will certainly do that in the next few days.  But

6  rather than getting involved any further to mislead someone, I

7  can't find any reason to transfer this case to California.  I'm

8  sorry, because I'd love to do it.  I really would.  We've got

9  enough work here in Virginia.  The only problem in Virginia with

10 regards to defendants is that the cases go faster.  California,

11 they take a long time.  Here in Virginia they take a lot less

12 time.  So consequently I want to go ahead and get this case

13 moving, and I don't like to delay decisions.  I will delay

14 getting the written opinion out.  So I'll get an opinion out.

15         I appreciate the argument.  I understand the position

16 that Delta would make in this case.  I'm also very aware that

17 Appotronics is the plaintiff and where Appotronics could bring

18 the suit.  If it's necessary, I will try to be as convenient as

19 possible to the parties.  But we'll see where we stand when we

20 get further along in this case.

21         And so the arguments in this case, I don't know what

22 they will bring us, but wherever we're going, we're going to go

23 along as quickly as possible and get this case off the docket.

24 I appreciate the argument.  I thought the briefs were excellent.

25 I just couldn't figure out how to transfer this case.  If I

1    could do it, my gracious, I would do it in a minute.  We have

2    enough difficult decisions to make.  I want to get them moving

3    along.

4            Is there anything else I could do for you at this

5    time, either one of you?  Anyone?

6            MR. HNATH:  Your Honor, this is Gary Hnath.  I think

7    that's it for us.  We do have an issue about depositions going

8    forward, and we've had some discussions with Delta's counsel

9    about the possible need to take those remotely in this COVID-19

10   world where depositions are sometimes done by Zoom just like

11   we're doing this hearing this morning by Zoom.  So you know,

12   we'll continue that dialogue with Delta's counsel, but I did

13   want to alert you to that one potential issue.

14           THE COURT:  Well, I can tell you this:  Generally, we

15   try to resolve any difficulties between parties.  The parties

16   have to try to resolve any difficulties that pertain to

17   procedural matters between the two of them.  I'm going to assure

18   you that this Court will move this case along.  We do not delay.

19   I do not delay.  I don't care who it is or what it is.  We don't

20   delay.  I want to emphasize that.  Because there's, in many

21   courts, the fact that parties generally agree on a continuance

22   is sufficient.  In this court, it isn't.  And I just want to

23   warn parties of that factor.  Even though you and the other side

24   may agree on it, it's not going to happen as such.  So I want to

25   emphasize that.  I want to emphasize, we move along quickly.  I

1   suggest you move along quickly.  I suggest that because

2   litigation is not an end, it's a means.  Litigation is to settle

3   problems which individuals or entities may have, it is not to

4   accommodate the legal profession.  Unfortunately, things have

5   changed in the years that I have been here.  But what hasn't

6   changed is the fact that we move along here.  And I want to

7   emphasize it, lest somebody get an idea that things can slow

8   down.  They're not slowing down.  We're moving forward.  We

9   believe that the parties are entitled to answers, not the

10  lawyers.  The parties are entitled to settle their dispute, not

11  the lawyers.  The lawyers are merely there to guide the

12  individuals in trying to arrive at a solution to whatever may be

13  a problem.  And I hope we can provide arrive at it quickly,

14  fairly.  And I emphasize it because sometimes the strangers to

15  this court have a different idea.  It may be one of the reasons

16  Congress decided to move the jurisdiction from the District of

17  Columbia to the Eastern District of Virginia.  So things move

18  along in different ways in different courts, and I just want to

19  emphasize that.

20       Is there anything else I can do at this time in

21  relation to this case?  Any information you want?  I assure you

22  two things:  Here, the docket clerk for this court is Ms.

23  Baxter.  She's seated right next to me here in the courtroom,

24  and if you have a problem, I suggest you get to her right away.

25  We'll get a date, we'll move it along and we will move it along.

```
1   If we have to, we'll deal with it by Zoom.  I think it's a very
2   efficient manner in disposing of matters.  This is Ms. Baxter.
3   She's very effective.  She's the docket clerk.  And I'm very
4   available to answer questions.  I like to get things over and
5   done with and they don't lag.  I try to.  It takes some time,
6   often, to get the written opinions out because they're written,
7   and it's not the only case we have in this court.  So just so
8   you understand that.  So we just don't want to let things lag.
9   I'll just advise you at the beginning, or try to.  And I
10  appreciate it.  I just wish I could figure out a way to transfer
11  this case, but I couldn't.  And I want to make that abundantly
12  clear.
13           Is there anything else at this time?  If not --
14           MR. KAO:  No.  Thank you for your time, Your Honor.
15           MR. HNATH:  Thank you, Your Honor.
16           THE COURT:  All right.  Thank you, very much.  It's an
17  interesting matter.
18           MR. KAO:  Thank you.
19           THE COURT:  We'll recess court at this time.
20           (Whereupon, proceedings concluded at 10:51. a.m.)
21
22
23
24
25
```

1          *CERTIFICATION*

2

3          *I certify that the foregoing is a true, complete and*

4  *correct transcript of the proceedings held in the above-entitled*

5  *matter.*

6

7          _____

8                    Paul L. McManus, RMR, FCRR

9                         _____

10                              Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25